UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:23-cv-00326-SE |
| ) | |
| Eighty-Seven Thousand One Hundred ) | |
| Dollars ($87,100.00) in U.S. Currency, ) | |
| More or less, seized from Bradford Sargent, ) | |
| ) | |
| Defendant *in rem*. ) | |

ANSWER TO VERIFIED COMPLAINT FOR FORFEITURE IN REM, FOR PROPERTY WITHIN THE UNITED STATES POSSESSION, CUSTODY OR CONTROL PURSUANT TO SUPPLEMENTAL RULE G

Bradford Sargent, through counsel, Shaheen & Gordon files this answer to the Government's Complaint for Forfeiture and responds in turn to paragraphs 1 through 17 as follows:

1. Around June of 2021, law enforcement officers began to investigate Bradford Sargent ("Sargent") for distribution of illegal narcotics. The officers received information from two cooperating individuals (CI One and Two) who completed four audio-recorded controlled buys from Sargent.

    **ANSWER:** Mr. Sargent lacks specific knowledge to admit or deny the allegations.

2. On October 13, 2021, CI One purchased one ounce of suspected methamphetamine for $760 from Sargent. On October 14, 2021, the suspected methamphetamine field-tested positive for methamphetamine.

    **ANSWER:** Mr. Sargent lacks specific knowledge to admit or deny, but admits that he sold methamphetamine to an individual in October of 2021.

3. On January 31, 2022, Sargent called CI Two and arranged to sell CI Two methamphetamine at the Homewood Suites in Portsmouth, New Hampshire. CI Two arrived at the Homewood Suites and walked with Sargent to room 130. Sargent's girlfriend, Jenelle Brown ("Brown"), was also in the room. CI Two purchased two baggies of methamphetamine from Sargent for $720.00.

Laboratory analysis later confirmed that the baggies contained 25.8 grams of methamphetamine hydrochloride.

>   **ANSWER:** Mr. Sargent lacks sufficient knowledge to admit or deny the allegations but does admit that he sold methamphetamine to an individual in January 2022.

4. On February 3, 2022, CI Two texted Sargent and Brown and arranged to buy more methamphetamine. Again, CI Two went to room 130 and purchased two baggies of methamphetamine for $1,200.00. Both Sargent and Brown were present. Laboratory analysis later confirmed that the baggies contained 41.965 grams of methamphetamine hydrochloride.

    >   **ANSWER**: Mr. Sargent lacks sufficient knowledge to admit or deny the allegations, but does admit he sold two baggies of methamphetamine to an individual in February 2022.

5. On February 7, 2022, CI Two texted Brown and arranged to buy more methamphetamine for $800.00. Brown told CI Two to come to room 130 at the Homewood Suites. During the sale, Brown opened a safe in the back that contained several baggies filled with large chunks of white crystal. Brown broke off some pieces of the white crystal, weighed them, and gave two baggies to CI Two. Laboratory analysis found that the two baggies contained 28.197 grams of methamphetamine hydrochloride.

    >   **ANSWER:** Mr. Sargent lacks sufficient knowledge to admit or deny the allegations but does admit that a sale of methamphetamine was made to an individual at the Homewood Suites in February 2022.

6. On February 9, 2022, officers executed a state search warrant for Room 130. Officers found and seized approximately $33,000.00 in U.S. currency and approximately 120 suboxone strips from a safe small safe inside a shoe case located in the living room next to the couch; a blue case for glasses with a bag containing methamphetamine; two large quart size Ziploc bags containing methamphetamine and fentanyl, a few empty Ziploc bags and torch style lighters from inside a black safe in the bedroom closet, three drug ledgers from a nightstand in the bedroom, three baggies containing methamphetamine from the living room desk drawer, Officers seized a total of 589.8 grams of a mixture containing fentanyl and 5.139 grams of methamphetamine hydrochloride. While searching Sargent's person during his arrest, officers seized a green-sleeved key marked "3-4020" from his wallet.

    **ANSWER:** Admitted.

7. Sargent was arrested, waived his Miranda rights, and voluntarily participated in an interview with law enforcement officers. During the interview, Sargent admitted to selling controlled substances from the hotel room he shared with Brown. Sargent also admitted to helping Brown sell controlled substances in the past. Sargent falsely told the officers that the key belonged to a safe deposit box at Holy Rosary Credit Union in Rochester, New Hampshire. Upon further investigation, the officers learned that the key was for a safe deposit box at TD Bank in Dover, New Hampshire.

    **ANSWER:** Admitted.

8. On February 10, 2022, officers executed a state search warrant for the two vehicles that Sargent used, an Acura TL and a Chevy Equinox. The Chevy Equinox contained three safes. Officers seized approximately $12,000.00 in U.S. currency and approximately twelve baggies containing controlled substances from the safes. Lab reports confirmed the baggies held a total of 744.146 grams of mixtures containing fentanyl, 547.956 grams of methamphetamine hydrochloride, and 20.876 grams of cocaine.

    **ANSWER:** Admitted.

9. On February 15, 2022, officers executed a state search warrant for the safety deposit box at TD Bank. The vault access record listed the renter, Bradford Sargent, and the dates that Sargent accessed the box: December 3rd, 12th, and 27th in 2021, and January 11th, 25th and 28th in 2022. Sargent signed his name on the vault access record each time that he accessed the safety deposit box. Sargent was the only person who accessed the box. As stated in the rental contract, it is against bank policy to store cash in a safe deposit box. Officers seized the defendant in rem, Eighty-Seven Thousand One Hundred Dollars ($87,100.00) in U.S. currency, bundled in plastic bags, from inside the box.

    **ANSWER**: Mr. Sargent lacks sufficient knowledge to admit or deny but does admit that he had $87,100 in U.S. currency inside a safe deposit box at TD Bank.

10. Law enforcement officers also obtained state search warrants to search the storage units Sargent rented at Rightspace Storage in Dover, New Hampshire. In one of the lockers, officers seized a baggie containing 0.705 grams of cocaine base. In another locker, officers seized three firearms.

> **ANSWER:** Mr. Sargent lacks sufficient knowledge to admit or deny but does admit that a quantity of drugs and firearms were seized from the storage unit.

11. In total, law enforcement seized a total of 1,333.946 grams of a mixture containing fentanyl, 649.057 grams of methamphetamine hydrochloride, 20.876 grams of cocaine, and 0.705 grams of cocaine base from Sargent.

    > **ANSWER:** Mr. Sargent lacks sufficient knowledge to admit or deny but does admit that substantial quantities of drugs were seized during this investigation.

12. On September 29, 2022, officers interviewed Brown. She said that she had lived with Sargent from approximately September of 2021 until their arrest. Brown said that they had stayed in Dover and Portsmouth area hotels. She said that Sargent was a prominent distributor of methamphetamine and fentanyl in the New Hampshire Seacoast area. Brown said that Sargent did not have any legitimate employment during the time she lived with him.

    > **ANSWER:** Mr. Sargent lacks sufficient knowledge to admit or deny but denies that he had no legitimate employment while living with Ms. Brown.

13. On August 15, 2022, a federal Grand Jury indicted Sargent and charged with him with conspiracy to distribute fentanyl and methamphetamine. Indictment, United States v. Bradford Sargent, No. 1:22-cr-92-PB. On March 28, 2023, Sargent pleaded guilty, DN 57, and is scheduled to be sentenced on July 6, 2023.

    > **ANSWER:** Admitted.

14. The allegations contained in paragraphs 1-14 of this Verified Complaint for Forfeiture in Rem are incorporated by reference.

    > **ANSWER:** Does not require a response.

15. Title 21, U.S.C. § 881(a)(6) subjects to forfeiture "all moneys … or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or … all proceeds traceable to such an exchange and all moneys … used or intended to be used to facilitate any violation of" the Controlled Substances Act.

    > **ANSWER:** Admitted.

16. The defendant in rem was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. § 801, et seq., or represents proceeds traceable to such exchanges, or money used or intended to be used to facilitate violations of the Act. As a result, the defendant in rem is liable for condemnation and forfeiture to the United States for its use in accordance with 21 U.S.C. § 881(a)(6).

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Mr. Sargent provided full cooperation/assistance to the government and freely admitted his illegal conduct. The in rem was not acquired by such conduct.

3. The in rem was in Mr. Sargent's possession and was legally obtained.

4. The in rem was not the proceeds of any drug or other illegal activity.

5. The in rem was not used in the commission of a drug crime or other felony.

Shaheen & Gordon, PA.

Date: August 20, 2024    By:    /s/Lawrence A. Vogelman
Lawrence A. Vogelman (#10280)
353 Central Ave, Suite 200
P.O. Box 977
Dover, NH 03821
Phone: 603-749-5000
Fax: 603-749-1838
Email: lvogelman@shaheengordon.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was delivered via ECF to all counsel of record.

/s/ Lawrence A. Vogelman
Lawrence A. Vogelman